IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | CASE NO. 1:17 CV 688 |
| Plaintiff, | |
| v. | JUDGE DONALD C. NUGENT |
| HARTFORD FIRE INSURANCE COMPANY, | MEMORANDUM OPINION AND ORDER |
| Defendant. | |

This matter comes before the Court upon cross-motions for summary judgment. Plaintiff, Liberty Mutual Fire Insurance Company ("Liberty") and Defendant, Hartford Fire Insurance Company ("Hartford") filed simultaneous motions for Summary Judgment on June 1, 2018. (ECF #17, 18). The briefing was complete on July 25, 2018, and both parties had the opportunity to orally argue the motions at a status conference on August 27, 2018. (ECF #26). The parties agree that there are no factual questions at issue and the Court should decide the case based on the stipulated facts and the language of the applicable contracts.

## STIPULATED FACTS

The parties submitted a Joint Statement of Stipulated Facts containing relevant facts and most of the relevant language from the insurance contracts at issue. (ECF #16). According to the stipulation, a tort claimant, Anthony Tomsic, filed a personal injury lawsuit in the Cuyahoga County Court of Common Pleas against several defendants, including the Cleveland Clinic Foundation ("Cleveland Clinic"), Parking Solutions, Inc. ("PSI"), and David Haas. The Complaint charged that Mr. Tomsic was injured when David Haas, the driver of a van owned by the Cleveland Clinic, negligently and inadequately secured his wheelchair in a van, in preparation for transport.[1] (ECF #16-1, ¶4). Mr. Tomsic alleged that because he was improperly secured, when the driver turned the vehicle, he, in his wheelchair, broke free and was thrown about the vehicle with great force, striking the walls and floor of the vehicle with his head and body and landing on the floor with his wheelchair on top of him. (ECF #16-1, ¶ 7). As a result of this, Mr. Tomsic was seriously injured and suffered lasting harm. (ECF #16-1, ¶10).

Prior to this incident, the Cleveland Clinic and PSI had executed a Parking Service Management Agreement ("Management Agreement"), which was in effect at the time of the accident. Liberty and Hartford, the parties in this case are not parties to this agreement. (ECF #16-4). The Management Agreement contains the following indemnification provision:

> To the fullest extent permitted by law, a party (the "Indemnifying Party") shall indemnify, defend, and hold harmless the other party (the "Indemnified Party"), its employee, agents, officers, directors, affiliated entities, and representatives (individually and/or collectively "Representatives") from and against any and all

---

[1] The parties did not stipulate to the specific contents of the Complaint, but included a copy of the Complaint as an Exhibit to their stipulations and agreed that it was a true and accurate copy of the Tomsic Complaint. (ECF #16, ¶ 4).

-2-

third-party claims, suits, actions, investigations, proceedings, liability, loss, damage or demands, and all related costs, penalties, interests, or expenses (including reasonable attorneys' fees) at all levels of litigation or other proceedings which may be sustained or incurred by the Indemnified Party at any time relating to or arising from (I) the Indemnifying Party's acts or omissions, whether negligent, willful or otherwise culpable, in the performance or failure to perform its obligations under this Agreement; (ii) any personal injury, illness or death attributable in whole or in part to the Indemnifying Party or its Representatives while they are on [Cleveland Clinic's] premises; (iii) a breach by the Indemnifying Party of the terms of this Agreement; or (iv) as a result of the Indemnifying Parties' violation of federal, state or local laws, rules or regulations.

The Management Agreement also provided that "[PSI's] insurance is primary to any valid collectible insurance carried by the Additional Insured's." It also required PSI to have the Cleveland Clinic named as an additional insured, to the extent that it was indemnified by the agreement, and covered "for any and all claims and legal proceedings of any kind whatsoever arising out of the Operator's work or operations." Such insurance "shall provide that [it] is primary and shall not contribute with any insurance or self-insurance that [Cleveland Clinic] has procured to protect itself."

Throughout the relevant period the Cleveland Clinic was insured by Hartford, and PSI was insured by Liberty. The Liberty policy had a liability limit of $1,000,000.00. (ECF #16-5, PageID 133). Hartford's policy had a liability limit of $2,000,000.00. (ECF #16-6, PageID 254). Both policies provide that "[w]hen this coverage form and any other coverage form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis." (ECF #16-5, PageID 222; ECF #16-6, PageID 268).

The Liberty policy states that it is primary for any covered auto PSI owns. "For any covered "auto" you don't own, the insurance provided by the coverage form is excess over any other collectible insurance." The Liberty policy is also considered primary "for any liability assumed under an "insured contract." An "insured contract" is defined as "[t]hat part of any other contract or agreement pertaining to your business *** under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement."

The Hartford policy states that it is primary for any covered auto owned by the Cleveland Clinic, as well as for any liability assumed under an "insured contract." The Hartford policy uses the same definition for "insured contract" as does the Liberty policy, as outlined above.

The parties agree that Mr. Haas was the driver of the van when Mr. Tomsic alleges he was injured, and that Mr. Haas was, at the time, working in the course and scope of his employment with PSI. They also agree that the Cleveland Clinic was the owner of the van driven by Mr. Haas. On January 23, 2017, Mr. Tomsic entered into a settlement agreement with the Cleveland Clinic, PSI, and Mr. Haas. He agreed to dismiss his claims in exchange for $275,000. Of this amount Liberty Mutual paid $137,500 on behalf of PSI and Mr. Haas. Hartford paid the other $137,500 on behalf of the Cleveland Clinic. At the time of the settlement, the two insurance companies agreed to share equally in the payment of the settlement sum and then to ask this Court to determine the rights and obligations of each under their respective policies.

## STANDARD OF REVIEW

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

Insurance coverage questions are generally questions of law for the Court to decide. *See, Stafford v. Jewelers Mut. Ins. Co.*, 554 Fed. Appx 360, 373 (6th Cir. 2014). "[W]ords and phrases used in an insurance policy must be given their natural and commonly accepted meaning, where they in fact possess such meaning, to the end that a reasonable interpretation of the insurance contract consistent with the apparent object and plain intent of the parties may be determined." *Sauer v. Crews*, 140 Ohio St.3d 314, 18 N.E.3d 410 (2014)(citations omitted). It is with these standards in mind that the instant Motions must be decided.

The case was brought to determine which insurance company is obligated to pay what part of the Tomsic settlement attributable to each insured. Both parties agree that there are no genuine issues of material fact, and that the Court may determine the distribution of liability based on the contract language of the respective insurance policies. Defendant, Hartford, also believes that the Court should consider the language of the Management Agreement when making its determination.

## ANALYSIS

### A. The Hartford Policy

The parties do not dispute that the Cleveland Clinic, Mr. Haas, and PSI all qualify as "insureds" under the Hartford insurance policy. The Cleveland Clinic is a specifically named insured. Mr. Haas qualifies as an insured because he is someone who used an insured Cleveland Clinic vehicle with the Cleveland Clinic's permission. (ECF #18-2, Section II(A)(1)(b)). PSI also qualifies as an insured because it is an entity liable for the conduct of Mr. Haas as his employer. (ECF #18-2, Section II(A)(1)(c)).[2]

The Hartford policy, by its own explicit terms, provides primary coverage for accidents and losses arising from the use of any vehicle owned by the Cleveland Clinic.[3] (ECF #18-2, Section II(B)(5)(a)). The parties agree that the vehicle involved in the accident which caused Mr. Tomsic's injuries was owned by the Cleveland Clinic. The Hartford policy, therefore, provides

---

[2] Hartford does not contend that PSI's liability stems from anything other than its role as employer of Mr. Haas. The factual allegations in the Complaint make clear that Mr. Tomsic's injuries are alleged to be the direct result of Mr. Haas' negligent failure to secure Mr. Tomsic is preparation for transport. Therefore, PSI's liability stems directly from its employer/employee relationship with Mr. Haas, and its indirect liability for actions Mr. Haas took (or failed to take) in the scope and course of his employment with PSI. The Complaint also alleges that PSI "negligently failed to . . . train and/or supervise their agents and/or employees to properly secure Mr. Tomsic and the wheelchair in the vehicle." PSI's potential liability for failure to properly train and/or supervise Mr. Haas is inseparable from its vicarious liability for Mr. Haas's negligent failure to secure Mr. Tomsic.

[3] When the damage claimed by a plaintiff arises from the allegedly negligent loading of a vehicle in preparation for transport, as occurred in this case, "the negligence directly involves the use of the [vehicle] as a transportation vehicle." *See Nat'l Fire Ins. Co. v. Owens Corning, Inc.*, NO. 1:99cv519, 2001 U.S. Dist. LEXIS 7356, *29-30 (U.S. Dist. W.D. Mich. May 29, 2001)(citing *Carter v. Burns*, 90 Ohio App.3d 787, 630 N.E.2d 767, 769 (1993)).

primary coverage for the losses of the Cleveland Clinic, Mr. Haas, and PSI.

Hartford argues that, despite this clear language within the policy, it is not responsible for covering the losses of PSI and Mr. Haas, because the Cleveland Clinic had entered into a Management Agreement ("Agreement") with PSI that included an indemnification provision and required PSI to carry its own commercial automobile liability coverage. The Agreement also required PSI to make its insurance primary to any insurance carried by the Cleveland Clinic, "for any and all claims and legal proceedings of any kind whatsoever arising out of [PSI's] work or operations." In this Agreement, PSI also agreed that its insurance would not contribute with any insurance that the Cleveland Clinic has procured to protect itself. (ECF #16, ¶¶ 14-16).

Based on the language of the Agreement, it would appear that PSI agreed to hold the Cleveland Clinic harmless for the events giving rise to underlying lawsuit, and that it agreed to have its insurance operate as the sole and primary coverage for such events.[4] Neither the Liberty nor the Hartford policies have any language, however, that would make Liberty the sole coverage for any events addressed by this litigation. The terms of the Agreement between PSI and the Cleveland Clinic cannot expand or otherwise alter the terms of Liberty's (or Hartford's) policy language. If the Cleveland Clinic believes that the Liberty policy did not fulfill the terms PSI agreed to in the Management Agreement, it must take that issue up with PSI. Liberty was not a party to the Agreement and cannot be bound by its terms,[5] except insofar as its policy may adopt

---

[4] This observation is based on a reading of only the stipulated portions of the Management Agreement is not a holding of the Court. For purposes of this opinion only, the Court will operate under the assumption that the Management Agreement was intended to operate in this manner.

[5] Hartford claims the right to go after Liberty for coverage because the Cleveland Clinic

or incorporate certain provisions of that contract.[6] The Court is limited in this action to a review of the insurance contract language and must apply that language without regard to its compliance or non-compliance with the terms of the Agreement between PSI and the Cleveland Clinic.

B. <u>The Liberty Policy</u>

The Liberty policy covers PSI and Mr. Haas for losses attributable to accidents connected to the use of the Cleveland Clinic vehicles, but it does not provide primary coverage for those losses. The Liberty policy clearly states that it is "excess over any other collectible insurance" for any covered auto PSI does not own. (ECF #16, ¶19). As stated above, the parties agree that the auto at issue in this case was owned by the Cleveland Clinic.

The Liberty policy takes on primary coverage for any liability assumed under an "insured contract." (ECF #18-2, Section II(B)(5)(c)). An "insured contract" is defined, in relevant part, as the part of a business contract "under which you assume the tort liability of another to pay for "bodily injury" or "property damage" to a third party or organization." (ECF #18-2, Section V(H)(5)). "Tort liability mean a liability that would be imposed by law in the absence of any

---

transferred any rights of recovery it has under the Management Agreement to Hartford in exchange for Hartford's payment of the settlement. However, even if Hartford has the right to enforce the terms of the Management Agreement, Liberty is not a party to that Agreement. Hartford would have to go after PSI directly if it claims that the Agreement was breached. It cannot force Liberty to pay for something PSI promised but allegedly did not deliver.

[6] Liberty's policy does provide primary coverage for obligations assumed under an "insured contract." This language will be discussed in more detail below. The Agreement's promise to make PSI's insurance sole and primary is not part of an "insured contract." Only the indemnification provisions of the Management Agreement are potentially relevant to the determination of coverage, and only insofar as they may qualify as "insured contract" coverage in the Liberty policy.

contract or agreement." (*Id.*) Hartford argues that Liberty must provide primary coverage to the Cleveland Clinic under the "insured contract" provision.

Citing *Lubrizol Corp. V. Natl. Union Fire Ins. Co.*, 200 Fed. Appx. 555, 562 (6th Cir. 2006) in support, Liberty argues that an indemnification clause that provides for mutual indemnification[7] by each party for its own acts and omissions cannot satisfy the definition of an "insured contract" because it does not require the assumption of the tort liability of another party. (ECF #24 at 3-4). The agreement in Lubrizol, although similar, did not mirror the language of the Management Agreement at issue in this case. There is no indication from the briefing, that the Lubrizol agreement defined tort liability in the same way as did the Liberty policy. The Lubrizol indemnity agreement did not appear to specifically provide that the indemnifying party would assume the liability imposed on the indemnified party by law in the absence of any contract or agreement, if that liability arose from the indemnifying party's negligent or willful acts and omissions.

Although the language at issue in Lubrizol is distinguishable from that at issue in this case, Lubrizol clearly instructed that in order to determine whether a contractual indemnity agreement is an "insured contract" a court "must first look to the indemnity agreement itself and determine whether the agreement obligated [the indemnifying party] to assume the tort liability of another." *Lubrizol, 200 Fed. Appx. at 562.* The words in the agreement must be construed to

---

[7] The parties appear to disagree on whether the Management Agreement provides for mutual indemnification or whether PSI is unilaterally required to indemnify the Cleveland Clinic. The language of the indemnification is not entirely clear, but the Court will assume for purposes of this opinion only that the indemnification was intended to be mutual.

have been used "in their ordinary and popular sense." *Id.* The language used in the definition of "insured contract" in Liberty's policy does not require an assumption of liability for the "acts and omissions" of the other party, and, therefore, is not so limited. Rather, the plain language requires only the assumption of the tort liability (defined as liability imposed by law in the absence of any contract or agreement) of another. There are many theories under which an entity may be legally liable for the acts and omissions of another, absent any contract or agreement, and those theories were pled against the Cleveland Clinic in the Tomsic Complaint.[8]

The indemnification provision of the Management Agreement implicitly acknowledges the potential for such vicarious or secondary liability. In executing the Management Agreement, PSI agreed, among other things, "to indemnify, defend, and hold harmless" the Cleveland Clinic "from and against any and all third-party claims, suits, actions, investigations, proceedings, liability, loss, damage, or demands, and all related costs, penalties, interest, or expenses" . . . which may be sustained or incurred by the Cleveland Clinic, arising from PSI's acts or omissions "in the performance or failure to perform its obligations under [the] Agreement," and "any personal injury . . . attributable in whole or in part to [PSI] or its Representatives while they are on [Cleveland Clinic] premises. " (ECF #16 at 3). Through this provision, PSI assumed the Cleveland Clinic's tort liability ("liability. . . which may be incurred by the Cleveland Clinic") to pay for the bodily injury of Mr. Tomsic (a third-party), under certain circumstances, which are

---

[8] Whether these theories would eventually have been provable is not a consideration the Court undertakes when the parties enter into a settlement prior to any legal decision in the case that would determine the viability of the allegations in the Complaint. When a determination of coverage is made based on a settlement payment, prior to any such determination, the Court looks solely to the allegations made in the Complaint in order to determine the scope of coverage.

alleged in the Tomsic Complaint (i.e., when the injury arises from PSI's performance of the contract or PSI or its representatives actions while on Cleveland Clinic property).[9] Thus, the indemnification provision contained in the Management Agreement, would, by its plain language, operate as an "insured contract" under the terms of the Liberty policy, in so far as PSI is assuming the secondary or vicarious liability that the Cleveland Clinic might have under the law, even though that liability arises from the acts and omissions of PSI and/or its employees.

The Liberty policy, therefore, operates as primary insurance for the Cleveland Clinic because it provides that it is primary "for any liability assumed [by PSI] under an "insured contract." (ECF #18-2, Section II(B)(5)(c)). The definition of "insured contract" does not extend to PSI's acceptance of its own tort liability for actions or omissions by PSI or its representatives, however, as that cannot satisfy the requirement of assuming the liability of another. Therefore, PSI's insurance policy from Liberty does not operate as primary coverage for the liability incurred by PSI or by its employee, Mr. Haas.

C. <u>Application to the Tomsic Settlement</u>

As set forth above, the Hartford policy, by its terms, operates as the primary insurance for PSI, and Mr. Haas for injuries caused in connection with the use of vehicles owned by the Cleveland Clinic. The Liberty policy provides only excess coverage for the liability of PSI and

---

[9] The Tomsic Complaint alleges that the Cleveland Clinic bears legal responsibility for the injuries caused by Mr. Haas' failure to properly secure Mr. Tomsic in the vehicle. The resolution of the Tomsic Complaint bears out the claim that the Cleveland Clinic faced its own independent legal liability, separate and apart from any liability claimed against PSI and Mr. Haas. The Cleveland Clinic and PSI were separately represented during the settlement negotiations, and paid separate amounts to settle the allegations in the Complaint.

-11-

Mr. Haas under these circumstances. Because Hartford's coverage is the only primary coverage for PSI and Mr. Haas, Hartford is responsible for covering their liability up to its coverage limits. PSI and Mr. Haas' cost of settlement was well under the Hartford policy limits.[10] Therefore, Liberty's excess policy does not provide coverage for PSI and Mr. Haas' under these circumstances. Hartford is, therefore, liable for the $137,500.00 Liberty paid for the Tomsic settlement on behalf of PSI and Mr. Haas.

The Hartford policy also operates as the primary insurance for the Cleveland Clinic for injuries caused in connection with the use of Cleveland Clinic vehicles. However, as set forth above, the Liberty policy also operates as primary insurance for the Cleveland Clinic under the "insured contract" clause. Both policies provide that when their policy, and any other coverage policy "covers on the same basis, either excess or primary, we will pay only our share." That share is defined as "the proportion that the Limit of Insurance of our coverage form bears to the total of the limits of all the coverage forms and policies covering on the same basis." (ECF #16-5, PageID 222; ECF #16-6, PageID 268). The Liberty policy had a liability limit of $1,000,000.00. (ECF #16-5, PageID 133). Hartford's policy had a liability limit of $2,000,000.00. (ECF #16-6, PageID 254). Liberty is, therefore, responsible for 1/3 of the $137,500.00 paid for settlement of the Tomsic Complaint on behalf of the Cleveland Clinic, and Hartford remains responsible for 2/3 of that amount.

## CONCLUSION

Based upon a thorough review of the briefs submitted by the parties, as well as the

materials submitted in support thereof, and for the reasons set forth above, the Court finds that Hartford is liable to Liberty for the $137,500.00 paid out by Liberty on behalf of PSI and Mr. Haas in the Tomsic Settlement. Liberty is liable to Hartford for $45,833.33, or one third of the amount out by Hartford on behalf of the Cleveland Clinic in the Tomsic Settlement. Accordingly, Defendant, Hartford Fire Insurance Company's Motion for Summary Judgment (ECF #17) is GRANTED in Part, and DENIED in Part, and the Motion for Summary Judgment of Plaintiff Liberty Mutual Fire Insurance Company (ECF #18) is GRANTED in Part and DENIED in part. The parties have until October 19th to submit an agreed judgment order reflecting the total amount owed by each party including legal fees and costs incurred in the defense of the Tomsic Lawsuit, or to submit briefs on the appropriate judgment amounts, taking into consideration the findings in this opinion, the total defense costs and any other recoverable fees. IT IS SO ORDERED.

/s/ Donald C. Nugent
DONALD C. NUGENT
United States District Judge

DATED: September 11, 2018